**Doreen DiMONTE, Appellant,**

v.

**NEUMANN MEDICAL CENTER and Assets Protection, Inc., Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 20, 1999.

Filed April 19, 2000.

Doreen Dimonte, appellant, pro se.

Jill Fisher, Philadelphia, for appellees.

Before CAVANAUGH, KELLY and BECK, JJ.

**PER CURIAM:**

¶ 1 This is an appeal from the order denying appellant's post-trial motions, and entering judgment after a jury verdict in favor of appellee Neumann Medical Center. Appellant brought this premises liability action against Neumann Medical Center after she was assaulted while walking from the medical center to its parking lot on May 8, 1992. Appellant's theory of liability is that the medical center provided inadequate security for its premises.

¶ 2 This case was tried before the trial court and a jury from November 23, 1998 until November 30, 1998. At the conclusion of the trial, the jury rendered a defense verdict in favor of Neumann Medical Center. Appellant's post-trial motions were denied. She now appeals therefrom and raises the following issues for our review: [1]

    I.    WHETHER THE JURY PROPERLY APPLIED THE LAW, AS CHARGED TO THEM, IN MAKING THEIR DETERMINATION OF A VERDICT FOR DEFENDANT?

    II.    WHETHER THE BACKGROUND OF SEVERAL JURORS, NOT DISCLOSED DURING VOIR DIRE, RESULTED IN A JURY THAT WAS TAINTED AND UNFAIRLY BIASED AGAINST THE PLAINTIFF?

    III.    WHETHER THE MISCONDUCT OF THE TRIAL JUDGE (ABSENCE FROM THE BENCH AND ENGAGING IN LENGTHY TELEPHONE CALLS DURING TESTIMONY) CONSTITUTES STRUCTURAL ERROR AND IF THIS DEFECT OF STRUCTURAL ERROR RESULTED IN SWAYING A JURY VERDICT AGAINST THE PLAINTIFF?

**1.** We note that appellant, represented by counsel at trial and during post-trial motions, appears *pro se* in the present appeal.

¶ 3 Appellant's first claim of error alleges that the jury, in reaching its verdict, either ignored or misapplied the law. This vague allegation of error was not raised in appellant's post-trial motions and is deemed waived on appeal. *See* Pa. R.A.P. 302 (issues not raised in lower court are waived).

¶ 4 Appellant's second claim of error alleges that "prejudicial backgrounds" of certain jurors, discovered during post-trial polling, should have been revealed during *voir dire*, but that the court clerk who presided over the proceedings did not permit appellant's counsel to ask the right questions.[2] After trial, one juror revealed that he had been employed as a hospital security guard, while another stated that as an employee of SEPTA's legal department, she had assisted in adjusting and defending against personal injury claims. This juror had also worked as a chiropractor's assistant, and believed that herniated disc injuries (such as that allegedly suffered by appellant) improve with treatment. Another juror admitted that she worked as an insurance claims adjustor.

¶ 5 Appellant has failed to demonstrate what specific questions, designed to discover these and other "prejudices," her counsel was not permitted to ask. Although counsel states in his affidavit that he was "not permitted to have a court reporter" to record the proceedings, counsel could have objected to the form of the proceedings once the judge was present. Moreover, appellant could have submitted to this court a list of the proposed questions her lawyer was not permitted to ask. In the absence of such actions in the trial court or in this appeal, we are unable to review this issue, and we must consider it waived as well.

¶ 6 In support of the third issue on appeal and pursuant to Pennsylvania Rule of Appellate Procedure 1923, appellant submitted affidavits supplementing the record which raise questions concerning the trial court's stewardship of the litigation. Pa.R.A.P.1923, 42 Pa.C.S.A.

¶ 7 After careful review, we conclude this matter should be remanded for an evidentiary hearing before the Administrative Judge of the Trial Division of the Court of Common Pleas of Philadelphia County or his designee. This hearing will facilitate appellate review if necessary by allowing appellant to present record evidence, and provide the trial court and the appellee the opportunity to contest appellant's allegations and present evidence. The failure of appellee to file a timely response pursuant to Rule 1923 and the treatment of these allegations by the trial court in its opinion leave this court with an incomplete picture of what actually occurred during this trial. A determination regarding the veracity of allegations and a determination of whether the conduct served to deny appellant her right to a due process proceeding, should in the first instance be made by an independent judicial officer, subject to appellate review upon a complete record, if after adjudication of this issue appropriate appeal is pursued.

¶ 8 The substance of appellant's claim, as gleaned from the affidavits, is as follows:

¶ 9 James Carino's affidavit (hereinafter "Carino"), dated June 29, 1999, states that he was retained by appellant's trial counsel as an expert witness. While in the courtroom, Carino noted that on at least three occasions the court was using the telephone while a witness was testifying. Carino specifically remembered that one call during his testimony involved a medical appointment and that the trial broke for an extended lunch in time for the court to presumably attend this appointment. Additionally, Carino recounts that during his

---

**2.** Appellant's trial counsel stated in an affidavit attached to appellant's brief that "many of the *voir dire* questions plaintiff's counsel had prepared ... were struck. Plaintiff's counsel was instructed that [he] would not be permitted to ask these questions, and was advised that [he] would not be permitted to have a court reporter present at [that] time."

testimony, the judge left the bench and climbed on a table or desk near the witness stand to adjust a heating vent while a male juror, at the judge's request, stood nearby to assist the judge's balance. Carino also stated that "[he] found [the judge's conversations] to be extremely distracting personally to [him] and cannot help but believe it could have impacted on [his] testimony." Finally, Carino recalls "trying to fight off being distracted and wondering how this extremely unprofessional behavior might be impeding the points [he] was trying to raise before the jury."

¶ 10 Dennis Ardell's (hereinafter "Ardell") affidavit, dated July 12, 1999, states that he is appellant's husband, that he testified as a witness in this trial and states that he was present in the courtroom for portions of this trial.

¶ 11 On the first afternoon, during both live and videotaped expert testimony, Ardell claims he observed the judge engaged in numerous phone calls of both a business and personal nature. Additionally, he claims he "overheard the judge talking loudly about theater tickets" from his seat in the rear of the courtroom. Further, Ardell asserts that the judge left the bench and walked past the bar of the court to retrieve water from a cooler located in the gallery portion of the courtroom and upon finding it empty complained about the lack of water and the excessive warmth of the courtroom.

¶ 12 Ardell next alleges that during the trial, that the court repeatedly thanked the jurors telling them they were exemplary and especially good citizens for serving so near Thanksgiving, noting that "I am sure you have better things to do." In particular, when addressing three African–American jurors, the court indicated that there was a "need to have more African–Ameri-

cans participating in jury trials" and that it was great to see them participating.

¶ 13 During his testimony, Ardell asserts that the court continued engaging in phone conversations, and admonished Ardell when he attempted to address his response to the court. Ardell contends that the court instructed him to speak to the jury "as they are the only one's who count." Ardell also asserts that the judge stood on a table to adjust a ceiling vent after calling upon the jury foreman to assist him. At a later point in Ardell's testimony, the judge left the courtroom without explanation.[3] Ardell claims that appellant's trial counsel later told him that the court at this time held his hand up to indicate appellant's counsel had five more minutes for direct examination. When he returned, the judge asked the court reporter to read the witness' answer so he could rule on a defense objection.

¶ 14 Ardell asserts that during appellant's closing argument the judge again left the courtroom returning to the doorway moments later with a sign with the number "7" written on it. Ardell claims he and appellant's counsel agreed that it was an indication to counsel he had seven minutes to finish his closing argument.[4]

¶ 15 Doreen DiMonte's (hereinafter "DiMonte") affidavit, dated July 12, 1999, identifies her as the plaintiff and a witness in this trial and indicates she was present in the courtroom each day.

¶ 16 As with the other witnesses, DiMonte asserts that the judge made and received numerous calls, claiming that at least ten calls were transacted during her testimony. Additionally, she claims that the judge was scheduling a medical test during Carino's testimony, in accord with the substance of his affidavit. DiMonte also asserts that during her doctor's video testimony, the judge engaged in telephone

3. Ardell's affidavit does not indicate specifically how long the judge was absent from the courtroom or whether the judge entered an adjacent room or left the courtroom suite entirely.

4. As stated above, Ardell's affidavit does not indicate specifically how long the judge was absent from the courtroom or his destination.

conversations concerning dinner engagements and theater tickets. She also alleges that the judge, without explanation, walked in and out of the courtroom several times during the video testimony.

¶ 17 DiMonte also asserts that many times during the trial the judge left the bench, requested the assistance of a male juror and attempted to adjust a heating vent with a yardstick while perched upon his court reporter's desk.

¶ 18 DiMonte also claims that during the trial, on several occasions the judge paused the proceedings to converse with the jurors, discussing how they came to Philadelphia, the nature of their employment and where they resided.

¶ 19 DiMonte also claims to have observed the court's departure from the courtroom during appellant's closing argument and the judge's holding up a sign with the number "7" while standing in the doorway.

¶ 20 Finally, DiMonte claims that during a post-trial conference, the trial court expressed an opinion that he thought prior to verdict that she had won the case. Additionally, she claims "He asked me what problems I had with the trial and his conduct and suggested that we could ask everyone else to leave his office so that just he and I could 'talk.' I declined his offer."

■ ¶ 21 Clearly, such a circumstance cannot be excused by a failure of counsel to object. Traditional waiver principles fail to account for the circumstance where a proper objection would require counsel to directly challenge the authority of the court by suggesting that the judge is deficient in his duties. The behavior complained of was essentially non-verbal and would have required counsel to challenge the authority of the trial court in a personal way. This circumstance is certainly distinguishable from an ordinary evidentiary objection, which merely suggests trial court error, allowing the court an opportunity to redress the situation, and does not question the propriety of the behavior of the presiding judge. Additionally, the phrasing of a proper objection based on the allegations of appellant would necessarily read as follows: "I object to your honor speaking on the phone while my witness is testifying." or "Let the record reflect that the court is standing on a table adjusting a heating vent."

¶ 22 Counsel's reluctance to challenge the court's authority is confirmed by his affidavit which addresses claimed biases of some jury members which came to light during and after the trial, but fails to support in any regard appellant's claim of trial court inattentiveness.[5] This is in stark contrast to the affidavits of appellant, appellant's husband Dennis Ardell and her expert witness James Carino, which detail alleged circumstances where the trial court either left the bench or engaged in telephone conversations while the trial was in progress.

¶ 23 Counsel's decision to restrict the content of his affidavit to alleged jury biases not discovered due to claimed limitations on *voir dire* may have been inspired by the trial court's opinion, which addresses the post-trial claim of inattentiveness as follows:

> Dimonte concludes by lodging a personal attack upon the Court claiming that this jurist left the bench, engaged in telephone conversations throughout the trial, and treated the case in a cavalier fashion so as to diminish its importance in the minds of the jury.
>
> The Court finds DiMonte's characterizations of its conduct to be fallacious. This case was of great importance to the Court and the utmost attention and decorum was accorded. The Court was

---

5. It is unknown how frequently appellant's trial counsel appears before this trial court, but clearly it is understandable that counsel would want to avoid personal conflict with any member of the bench.

present and available to address any legal issues and did so.

Trial Court Opinion filed April 7, 1999.

¶ 24 The court's description of these claims as a "personal attack upon the Court", supports the conclusion that a trial objection by counsel was not feasible under the circumstances. Additionally, it is alleged that the trial court repeatedly sought to develop a rapport with the jury, commending their service and good citizenship and taking a personal interest in their lives. Therefore, a perceived attack upon the court during the proceedings may have engendered disfavor with the jurors in addition to a potentially hostile response from the court. A decision to take exception outside the hearing of the jury, if it provoked continued and unexplained hostility by the court toward the appellant may have given the jury the impression that appellant was attempting to engage in some sort of misconduct. As such, the decision of the appellant through her counsel to suffer through the alleged conduct without objection should not be deemed a waiver.

¶ 25 We recognize that our jurisprudence requires a finding a waiver in the vast majority of circumstances where a party fails to make a timely, specific objection. However, we do not believe that waiver should be necessary when the appropriate objection would require a party to directly confront the trial court with a claim as to its own governance of the proceedings.

¶ 26 We believe this case falls within the limited exception to the waiver rule expounded by our Supreme Court in *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985). In *Hammer*, the Pennsylvania Supreme Court recognized a limited exception to the waiver doctrine in cases of judicial intemperance. The Court noted the fact that "[I]n the courtroom, the judge is the foremost authority, second to none and no governor of the judge's con-

duct resides in the courtroom save the judge." The Court continued, citing *Commonwealth v. Myma*[6] *for the following proposition*:

> The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality.... To depart from the clear line of duty through questions, expressions, or conduct, contravenes the orderly administration of justice.

*Hammer*, 508 Pa. at 96, 494 A.2d at 1058.

> The duty therefore lies with the judge to insure that his conduct is 'above reproach,' or minimally, is not prejudicial. We therefore question the continued validity of the waiver doctrine as applied to improprieties of the trial judge for when the position of power and authority enjoyed by the judge is considered, the strict enforcement of the waiver doctrine becomes inadvisable. (citation omitted).

*Hammer*, 508 Pa. at 96–97, 494 A.2d at 1058.

¶ 27 The Court noted that the Code of Judicial Conduct recognizes "that the judge is the foremost regulator of his own conduct." The court continued:

> The efficacy of counsel in assuring impartiality of the judge is negated by this self-regulatory function and the authority of the bench, for a judge who poses a question or makes a comment during trial is predisposed to believe that the question or comment is proper, lest it not be spoken. Given that predisposition, the likelihood that the judge will be well-cautioned by counsel's objection is negligible. In that context, the rationale underlying the waiver doctrine, that timely objection gives the court the opportunity to cure the error, becomes a relatively empty one. Indeed the possibility exists that counsel's objection will be viewed as a source of annoyance and

6. 278 Pa. 505, 123 A. 486 (1924).

may well aggravate the situation. Thus, we are not inclined to strictly enforce the waiver doctrine in the case of judicial intemperance for counsel cannot veto actions viewed by the judge to be wholly permissible. (footnotes omitted).

*Hammer*, 508 Pa. at 98–99, 494 A.2d at 1059–1060.

¶ 28 The Court, again citing *Myma*, noted the potential impact of the court's actions on the jury.

An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence. Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses's[sic] credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them. (citation omitted).

*Hammer*, 508 Pa. at 100–101, 494 A.2d at 1060–1061.

¶ 29 The appropriateness of finding a limited exception to the waiver doctrine in the present civil case is supported by the fact that the Court in *Hammer* relied upon *Collins v. Sparks*, 310 S.W.2d 45 (Ky.1958), a civil decision of the Court of Appeals of Kentucky,[7] for the proposition that trial counsel need not object to an "objectionable remark" of the trial judge for this issue to be preserved. In both *Hammer* and *Collins*, the objectionable conduct was initially raised in post-trial motions, giving the trial court an opportunity to address the claim before appeal. Here, appellant initially raised the claims of misconduct in a post-trial motion addressed to the trial court.

¶ 30 Assuming *arguendo* that appellant's allegations are true, we have a circumstance where: 1) the court left the bench on numerous occasions; 2) the court enlisted the assistance of a juror in a courtroom maintenance project during testimony; 3) the court made and received numerous phone calls of both a business and personal nature during testimony and closing argument; and 4) the court left the courtroom entirely, without explanation, on two separate occasions.

¶ 31 Appellant's claim that she was denied a fair trial by the actions of the trial court is further supported by the holding in *United States v. Mortimer*, 161 F.3d 240 (3rd Cir.1998). In *Mortimer*, the Third Circuit held that the unexplained absence of the trial judge during the defendant's closing argument constituted structural error because the judge was absent during a critical stage of the trial. The Court explained:

A trial consists of a contest between litigants before a judge. When the judge is absent at a "critical stage" the forum is destroyed. There is no trial. The structure has been removed. There is no way of repairing it. The framework "within which the trial proceeds" has been eliminated. The verdict is a nullity. (citations omitted).

*Mortimer*, 161 F.3d at 241.

¶ 32 The Court recognized that the parties may consent to excuse the presence of the judge, but held that by continuing her summation defense counsel did not consent to the court's absence. *Mortimer*, 161 F.3d at 241.

¶ 33 The Court rejected the government's claim that the defendant must show prejudice to obtain relief, stating: "[p]rejudice to the defendant from the

7. The highest state court for that jurisdiction, in 1976 its name was changed to the Supreme Court of Kentucky.

jury inferring that the defense was not worth listening to may have occurred; it is not necessary on this appeal for the defendant to demonstrate it. The structural defect determines the result." *Mortimer*, 161 F.3d at 242.

¶ 34 Although *Mortimer* is a criminal matter, the same reasoning is sound in the civil context. When the actions of a judge indicate that he or she has better things to do than listen to a party's testimony or argument, this may infect the jury with a sense that the proffered evidence or argument is not worth its attention. Additionally, the distracting effect of the alleged conduct upon witnesses cannot be discounted.

¶ 35 For the above reasons, we remand this matter for an evidentiary hearing to determine if there is any merit to appellant's claims of judicial comportment during the trial, and the effect, if any, on appellant's due process right to a fair trial and to enter an appropriate order subject to the parties' appeal rights.

¶ 36 Affirmed in part and remanded in part for proceedings not inconsistent with this opinion. Jurisdiction is relinquished.