**Bashir v. Ajaye**

130

*Dora R. Garcia,* for plaintiffs.

*Michael E. Ellery* and *Kevin R. McNulty,* for defendant.

RUSSELL, *J.,* May 12, 2010—Plaintiff-appellant, Muhammad Bashir, and plaintiff-appellant, Rubina Bashir, brought this action against defendant-appellee, Robert Ajaye, administrator of the estate of Arnold Ajaye to recover damages stemming from a rear-end collision that occurred on January 17, 2004. At trial, plaintiffs asserted that defendant's negligence in the operation of his vehicle was the factual cause of plaintiffs' injuries. A jury trial commenced before the Honorable Edward Russell on September 8, 2009 and the jury returned a verdict in favor of the defendant on September 9, 2009. The jury found that the accident was not the factual cause of the plaintiffs' lower back pain.

On September 21, 2009, plaintiffs filed a post-trial motion requesting a new trial. Defendant replied on October 16, 2009. On November 20, 2009, this court heard oral argument on plaintiffs' post-trial motion and entered an order denying plaintiffs' post-trial motion on November 23, 2009. On December 23, 2009, plaintiffs filed a notice of appeal regarding this court's order denying plaintiffs' post-trial motion. On December 23, 2009, this court entered judgment on the verdict.

On February 1, 2010, this court ordered plaintiffs to file and serve on the trial judge a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 25 days from the date of the order. Plaintiffs filed their statement on February 19, 2010. In their statement, plaintiffs contends:

"(1) The trial court erred in admitting the videotaped deposition of the defense medical expert, Dr. Brooks. The deposition of Dr. Brooks was obtained ex parte and in violation of a prior order of this court, precluding the defendant from offering any defense to plaintiffs' claims.

"(2) Plaintiffs were required to subpoena defendant's expert physician witness to testify at the trial of this matter because the defendants had obtained ex-parte video-taped deposition of the witness in violation of a court order. At the time this witness was scheduled to appear and testify, plaintiffs' counsel requested the trial court compel the witness to honor the duly issued subpoenas served upon the doctor to appear and testify at trial. The trial court refused in the apparent belief that it could not compel a physician witness to testify at a trial and that it could not direct such physician to produce reports of other medical-legal examinations performed by him. In so holding, the trial court erred.

"(3) Plaintiffs obtained preclusion and judgment against defendant on the issue of liability for his default in failing to produce discoverable documents in his possession; failing to appear for depositions; and failing to answer interrogatories. This sanction was later allegedly vacated and was insufficient in any event in light of the

egregious nature of defendant's conduct. Plaintiffs should have been given judgment on the issue of causation and this matter should have been submitted to the jury solely for the purposes of assessing damages.

"(4) The trial court erred in refusing to enforce the subpoena issued to the defendant's insurance company and in failing to require the full disclosure of all of the insurance company's files and testimony by the custodian.

"(5) The trial judge erred and abused his discretion in repeatedly engaging in conduct that prejudiced the plaintiffs and prohibited counsel from developing a proper record for appellate review. Plaintiffs' counsel made numerous requires at sidebar conferences and in the robing room to have various objections placed upon the record. The trial court refused to allow counsel to make such objections and further threatened the declaration of a mistrial of counsel offered any statements regarding such objections before the stenographer in open court. In so acting, the trial judge abused his discretion and erred as a matter of law.

"(6) The trial court erred with regard to the limitations it imposed on plaintiff's evidence with respect to economic damages. At trial, plaintiffs intended to introduce evidence regarding his actual income loss as calculated by his average declared income tax earnings averaged over a period of prior years. In addition, however, the plaintiffs sought to present evidence regarding his loss of earning capacity arising from the accident. The trial court erroneously refused such evidence.

"(7) To the extent the jury's verdict represents a finding that the issue of causation was not established with

regard to plaintiff-husband's injuries, this too is error. Where there is no dispute that the defendant is negligent and the medical evidence unequivocally indicates that the accident caused some injury to the plaintiff, the jury may not find that the defendant's negligence was not a substantial factor in bringing about at least some of the plaintiff's injuries. In refusing to set aside the verdict, the trial court erred." Plaintiffs' statement of errors complained of an appeal filed on February 19, 2010 at 1-4.

Plaintiffs appeal this court's decision to deny post-trial relief. As presented in plaintiffs'1925(b) statement of February 19, 2010, plaintiffs finds error with this court's rulings. For the following reasons, this court's ruling should be affirmed.

## I. BACKGROUND

At trial, plaintiffs alleged that Ajaye was negligent when, on January 17, 2004, at or near an on ramp on Route 676 heading toward Center City, Philadelphia, his vehicle bumped into the rear-end of plaintiff's vehicle, which plaintiff Muhammad Bashir was operating. N.T. 9/8/09, at 30-32. Both cars were drivable from the scene of the accident. N.T. 9/8/09, at 60. Following the accident, plaintiff Muhammad Bashir drove himself to Jeanes Hospital, where he was treated and released. N.T. 9/8/09, at 60. He continued to seek treatment through his doctor, where he received physical therapy for about six months. N.T. 9/8/09, at 42. He was also seeing a spine specialist, who prescribed pain medications. N.T. 9/8/09, at 48.

Plaintiff Muhammad Bashir also testified that he did not receive a performance-based promotion because his

performance at work was down due to the accident. N.T. 9/8/09, at 51. Plaintiffs also presented the videotaped testimony of Dr. Randall Smith. N.T. 9/8/09, at 105. Defendant presented the videotaped testimony of Dr. Michael Brooks. N.T. 9/8/09, at 114.

At the conclusion of the testimony, this court charged the jury. This court explained that the jury must be the final finders of fact and that they must weigh all the evidence in reaching their final conclusion.

## II. DISCUSSION

### (A) *The Court Properly Allowed the Testimony of Defendant's Medical Expert Witness, Dr. Michael Brooks*

The court was correct in allowing the videotape testimony of defendant's medical expert because plaintiffs had ample notice of the deposition testimony and plenty of time to depose Dr. Brooks. [I]t is well established that admission of expert-opinion evidence is a matter for the discretion of the trial court and will not be reversed, overruled or disturbed unless there was a clear abuse of discretion." *Laubach v. Haigh,* 433 Pa. 487, 491, 252 A.2d 682, 683 (1969).

Dr. Michael's Brooks' videotape deposition was presented to the jury at trial. N.T. 9/8/09, p. 114. Plaintiffs argue that Dr. Brooks' deposition was obtained ex parte in violation of a prior court order. This argument, however, is without basis.

In the beginning of the trial and on the record, plaintiffs objected to Dr. Brooks' videotape deposition, claiming

a valid preclusion order existed against defendant when Dr. Brooks' deposition was taken. N.T. 9/8/09, pp. 4-9. Dr. Brooks' deposition was originally scheduled for November 26, 2007, but had to be postponed because plaintiffs' then counsel, Dora Garcia, was disbarred. N.T. 9/8/09, p. 5. The deposition was rescheduled for Friday, April 4, 2008, and successor counsel for plaintiffs, Jeffrey Pearson, was sent a notice of deposition on March 11, 2008. N.T. 9/8/09, pp. 5-6. Mr. Pearson notified defendant on April 1, 2008[1] that he would be out of state and that defendant had not answered plaintiffs' expert interrogatories. Defense counsel advised Mr. Pearson that the deposition would not be rescheduled and that he had at least three weeks notice for the deposition, which had already been continued from a prior date. N.T. 9/8/09, p. 6. Mr. Pearson never advised defense counsel that he would not appear for Dr. Brooks' deposition because Dr. Brooks was precluded from testifying at trial.

To support their argument, plaintiffs rely on *Mudd v. Nosker Lumber Inc.,* 443 Pa. Super. 486, 662 A.2d 660 (1995), but their reliance is misplaced. In *Mudd,* the appellants claimed that a judgment of non pros had been entered against them. *Id.* at 486, 662 A.2d at 661. In *Mudd,* the last docket activity initiated by the Mudds occurred on January 31, 1991. *Id.* at 489, 662 A.2d at 663. On November 11, 1993, the day before the trial was due to begin, appellee's attorney requested that the trial be postponed for another month, so that the parties could pursue a settlement. *Id.* at 489-90, 662 A.2d at 663. Four

---

1. The notes of testimony have the date as "April 1, 2007." N.T. 9/8/09, p. 6.

136

weeks later, and several weeks shy of the continued trial date, defendant moved for non pros on December 13, 1994. *Id.* at 490, 662 A.2d at 663. The court held that the appellees were estopped from filing a motion for non pros when appellees asked for the continuance, probably in order to file the non pros motion. *Id.* at 491, 662 A.2d at 664, The appellees misled the Mudds into believing they wished to negotiate a settlement and then asked that the court to reward them for their tactics by affirming the grant of non pros. *Id.*

The case sub judice differs substantially from *Mudd.* First, the preclusion order against defendant was improper. As soon as defense counsel learned a preclusion order existed, he promptly filed a motion for reconsideration. The Honorable Allan L. Tereshko granted defendant's motion for reconsideration and noted on the order vacating the sanctions that the order imposing sanctions had been entered in error.

Additionally, plaintiffs' counsel had ample notice of the deposition. Defendant gave plaintiffs three weeks notice. Plaintiffs' counsel, however, did not inform defendant that he could not attend until three days before the deposition. Additionally, in notifying defendant that he would not be present, plaintiffs' counsel never mentioned the fact that he would not appear because defendant was precluded from taking any discovery. Moreover, plaintiffs never tried to depose Dr. Brooks after plaintiffs' then counsel Mr. Pearson failed to appear at the deposition. Dr. Brooks' deposition took place on April 4, 2008. In contrast, the trial took place September 8, 2009. Even though plaintiffs' counsel during the trial was not the counsel that failed to appear at Dr. Brooks' deposition,

plaintiffs' trial counsel entered his appearance on September 4, 2008. Thus, from the time plaintiffs obtained new counsel, they had over one year until the time of trial to depose Dr. Brooks. During that time period, no evidence exists that plaintiffs attempted to depose Dr. Brooks. In effect, plaintiffs' counsel asked this court to fix a mistake he made in not attempting to depose Dr. Brooks. This court has the discretion to allow this testimony, and this court did not err in making that ruling.

Finally, even if, as plaintiffs argue, Dr. Brooks' deposition was taken in violation of a court order, plaintiffs should not have waited until the day of trial to raise this issue. Discovery violations should be brought up with discovery court and not left until the day of the trial. Plaintiffs had ample time to bring up this matter before the court before the trial date. However, plaintiffs never raised this issue. Thus, this court properly allowed the deposition of Dr. Brooks.

### (B) *The Court Properly Refused To Enforce the Subpoena of Defendant's Medical Expert Witness, Dr. Michael Brooks*

Plaintiffs next argue that this court erred by failing to compel the testimony of Dr. Brooks at trial. The law in Pennsylvania clearly states that a party may not compel the testimony of another party's expert witness. See *Evans v. Otis Elevator Company,* 403 Pa. 13, 27, 168 A.2d 573, 580 (1961). Plaintiffs concede that courts may not compel the testimony of another party's expert.[2]

---

2. Plaintiffs' brief in support of post-verdict motion, at 14.

Therefore, this court was proper in not compelling the testimony of Dr. Brooks at trial.

Additionally, as stated above, plaintiffs' prior counsel had an opportunity to cross-examine Dr. Brooks when his deposition was scheduled on April 4, 2008. Moreover, plaintiffs' current counsel has had plenty of time to cross-examine Dr. Brooks before trial. Essentially, plaintiffs asked this court to correct their failure to depose Dr. Brooks. Thus, this court was proper in refusing to enforce the subpoena against Dr. Brooks.

### (C) *The Court Properly Ruled That Plaintiffs Were Not Entitled to Judgment on Causation*

Plaintiffs claim that this court should have given them a judgment on causation because of the egregious nature of defendant during discovery. Plaintiffs, however, completely mischaracterize the procedural history and substantive record in this case.

First, plaintiffs claim there was a valid preclusion order and judgment against defendant on the issue of liability. That statement, however, is false. As discussed above, no valid preclusion order was ever entered against defendant. Additionally, no judgment for default or an order precluding defendant from presenting the issue of factual cause to the jury was ever entered against defendant.

In their brief in support of post-verdict motions, plaintiffs state that Pa.R.C.P. 4019(c)(3) expressly authorizes a court to enter a default judgment against a defendant in a civil action who refuses to comply with the court's discovery orders. Again , however, plaintiffs' reliance is

misplaced. Pa.R.C.P. 4019(c)(3) is a discovery rule and all discovery was completed by the time trial commenced in September 2009. Thus, all discovery issues and sanctions should have been disposed of well in advance of trial. Therefore, this court did not abuse its discretion when it refused to order sanctions against defendant.

(D) *The Court Properly Refused To Enforce the Subpoenas Issued to Defendant's Insurance Company*

"The admissibility of evidence is a matter addressed to the sound discretion of the trial court and should not be overturned absent an abuse of discretion." *Delpopolo v. Nemetz,* 710 A.2d 92, 94 (Pa. Super. 1998).

Generally, evidence of insurance is irrelevant and prejudicial and justifies grant of a mistrial. *Paxton National Insurance Company v. Brickajlik,* 513 Pa. 627, 631, 522 A.2d 531, 533 (1987). "The reason is obvious: fact-finders should not be tempted to render decisions based upon the extraneous consideration that an insurance company will actually pay the bill." *Id.*

Therefore, if plaintiffs had presented a claims representative or records custodian from Allstate Insurance Company, this information would have been prejudicial and inadmissible at trial. Secondly, plaintiffs failed to set forth a sufficient basis explaining why the Allstate file would have been relevant in this case. All plaintiffs stated was that the "file likely contained helpful information which plaintiffs could have employed to impeach the defendant's argument that the accident did not cause injury to plaintiff-husband." [3]

---

3. Plaintiff's brief in support of post-verdict motions, at 22.

140

Plaintiffs' statement is misguided for several reasons. First, no logical correlation exists between an insurance agent's notes in a file and the ability to impeach a defendant regarding a plaintiff's injuries in an accident. The insurance agent is not a medical expert and could not account for the injuries one could sustain in an automobile accident.

Second, plaintiffs should not be permitted to go on a fishing expedition in an effort to bring in evidence that is otherwise inadmissible. The discoverable portions Allstate's files were produced during discovery. Thus, any information from the insurance records that plaintiffs could have used were given to them. Accordingly, the court properly refused to enforce the subpoenas issued to defendant's insurance company,

## (E) *Judicial Conduct*

During the trial, this court never abused its discretion by engaging in conduct that prejudiced the plaintiffs, nor did it prohibit plaintiffs' counsel from making a proper record. "An abuse of discretion occurs 'when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.'" *Tukovits v. Prudential Insurance Company of America,* 448 Pa. Super. 540, 546, 672 A.2d 786, 790 (1996). This court's actions never amounted to judicial misconduct.

In support of their claims during trial, plaintiffs testified concerning their alleged damages from the motor vehicle accident, In addition, plaintiffs presented medi-

cal testimony from Dr. Randall Smith, an orthopedic surgeon. The jury was given ample evidence to evaluate the merits of plaintiffs' claims, Plaintiffs' counsel made a record to preclude the expert testimony from Dr. Michael Brooks, which was summarily denied by the court. Plaintiffs' counsel and defense counsel presented agreed upon points for charge and an agreed upon verdict slip, which was ultimately presented to the jury. (N.T. 9/9/09, p. 3.)

In support of their contention for misconduct, plaintiffs rely on *DiMonte v. Newman Medical Center,* 751 A.2d 205 (Pa. Super. 2000). In *DiMonte,* it was well documented that the trial judge engaged in inappropriate behavior during the course of the trial, including standing on a table or desk near the witness stand to adjust a heating vent and conducting personal business while on the bench. In that case, it was also pointed out that the trial judge commented that there were African-American jurors, that we need to have more African-Americans participating in trials, and it was great to see them participating. The *DiMonte* court stated:

"Assuming arguendo that appellant's allegations are true, we have a circumstance where: (1) the court left the bench on numerous occasions; (2) the court enlisted the assistance of a juror in a courtroom maintenance project during testimony; (3) the court made and received numerous phone calls of both a business and personal nature during testimony and closing argument; and (4) the court left the courtroom entirely, without explanation, on two separate occasions.

"Appellant's claim that she was denied a fair trial by the actions of the trial court is further supported by the

holding in *United States v. Mortimer,* 161 F.3d 240 (3d Cir. 1998). In *Mortimer,* the Third Circuit held that the unexplained absence of the trial judge during the defendant's closing argument constituted structural error because the judge was absent during a critical stage of the trial. The court explained:

"A trial consists of a contest between litigants before a judge. When the judge is absent at a 'critical stage' the forum is destroyed. There is no trial. The structure has been removed. There is no way of repairing it. The framework 'within which the trial proceeds' has been eliminated. The verdict is a nullity. (citations omitted)" *DiMonte,* 751 A.2d at 211.

Based on conduct of the trial judge in *DiMonte,* the Superior Court remanded that case for an evidentiary hearing to determine if there was any merit to the appellant's claims and appellant's due process to a fair trial.

In the present case, no such conduct occurred. At all times, this court conducted itself appropriately. He was present throughout the entire trial, allowed both parties to present evidence, and completely allowed for a fair and impartial trial. Plaintiffs point to nothing in the notes of testimony that supports their contentions of the judge's misconduct. As such, plaintiffs' accusations are untrue.

Therefore, this court did not abuse its discretion during the trial.

### (F) *The Court Properly Excluded Plaintiff's Wage Claim*

The plaintiffs content that this court was improper on the limitations it imposed on plaintiffs' evidence with

respect to economic damages. Plaintiffs, however, never attempted to elicit any evidence of actual income loss or proof of support for such an income claim.

In fact, the only testimony about income loss concerned a performance-based promotion and the following testimony illustrates the point of lack of evidence or sufficient foundation by the plaintiff Muhammad Bashir:

"Q: Would that promotion have been automatic or would you—?

"A: No, it's a performance-based promotion.

"Q: And it's your testimony today that your performance was down and that's why you did not get it?

"A: Absolutely.

"Q: What would that job have paid if you had received it?

"Mr. McNulty: Objection, your honor.

"The Court: Sustained.

"Q: When would you have received that promotion?

"A: About five years, four years ago." N.T. 9/8/09, p. 51-52.

Other than this very speculative line of questioning, no evidence exists that plaintiffs tried to establish lost income or wages. This line of questioning was not sufficient evidence or a proper foundation for the evidence on the issue of lost wages.

Moreover, the jury found that defendant was not the factual cause of plaintiff Muhammad Bashir's injuries. Thus, even if plaintiffs were allowed to bring in a wage

claim, the jury would not have awarded those damages.

### (G) *The Court Properly Ruled That the Jury's Verdict Was Not Contrary to the Evidence*

Plaintiffs next contend that the jury's verdict was contrary to the evidence. In this case, defendant did not dispute negligence, but did dispute factual cause. In their post-trial brief, plaintiffs claim that "all the medical experts conceded that plaintiff husband suffered at least some injury to his knees as a consequence of the accident."[4] "Where there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused some injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least some of plaintiff's injuries." Such a verdict is contrary to the weight of the evidence adduced at trial. In other words, "a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Andrews v. Jackson,* 800 A.2d 959, 962 (Pa. Super. 2002). In other words, if, in fact, a defendant's expert concedes injury attributable to an accident, then the court may take notice of this and not charge the jury on factual cause. *Id.*

Plaintiffs, however, completely misstate the record when they state that all the experts concede that plaintiff husband suffered at least some injury because of the accident. In fact, Dr. Brooks, the defense expert, did not

---

4. Plaintiff's brief in support of post-verdict motions, at 28.

acknowledge a link between the plaintiff's knee injury and the accident. All Dr. Brooks did was not dispute that plaintiff's knees were injured in the accident. However, Dr. Brooks is a neuroradiologist who reviews spine films and does not testify regarding knees. The fact that Dr. Brooks could not dispute whether plaintiff's knees were injured is not tantamount to Dr. Brooks saying that plaintiff suffered an injury in the accident. Moreover, not disputing an injury is not the same thing as agreeing an injury has occurred. Here, this court was correct in allowing the jury to decide factual cause because all medical testimony did not agree that plaintiff's knees were injured in the accident.

## III. CONCLUSION

For the foregoing reasons, this court respectfully requests that the order deriving plaintiffs' post-trial motions, entered on November 23, 2009, be affirmed.