J-A19019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARIA J. BONO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRY B. BONO | : | |
| | : | |
| Appellant | : | No. 250 EDA 2020 |

Appeal from the Order Entered December 23, 2019
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  DR-0109117

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:                Filed: November 25, 2020

Terry B. Bono ("Father") appeals from the child support order entered on December 23, 2019. He argues the trial court erred in ordering the parties to take depositions prior to the *de novo* hearing, in assessing his income and the income of his ex-wife, Maria J. Bono ("Mother"), and in allocating child care expenses between the parties. We affirm.

Mother and Father have two minor children. Mother filed a complaint for child support in September 2017, and the parties first appeared for a hearing before a domestic relations conference officer in October 2017. The conference officer issued a recommended order that the trial court adopted as an interim order on October 26, 2017.[1] The court ordered Father to pay Mother $1,234 monthly, plus arrears.

_____

[1] The order was filed on the docket on October 27, 2017.

Father filed a written demand for a *de novo* hearing before the trial court. The parties appeared before the court on December 18, 2017, and the court ordered the parties to complete depositions and submit the transcripts of the depositions and briefs to the court prior to the *de novo* hearing. **See** Order, 12/18/17, at 1. After several continuances, the parties submitted the transcripts and briefs at a *de novo* hearing in October 2018. Following the hearing, the court entered an order finalizing the October 26, 2017 support order for the period of September 11, 2017, through December 31, 2017. **See** Order, 11/14/18, at 1.[2] The court then remanded the case for a change of circumstances hearing and a new support recommendation for the period starting January 1, 2018. **See id.**

Father filed a petition for modification. The parties appeared for an office conference in early January 2019, and the attorneys for both parties advised the conference officer to refer to the previous depositions for the parties' respective positions. **See** Trial Court Opinion, filed 3/12/20, at 6. The court entered an order continuing the proceedings until receipt of the parties' 2018 tax documents. Order, 1/23/19, at 1. The court entered an interim support order on April 5, 2019,[3] and a modified order of support on May 31, 2019, both of which ordered Father to pay child support starting on January 1, 2018.

_____

[2] The order was dated November 14, 2018, but filed on the docket on November 16, 2018.

[3] The order was filed on the docket on April 8, 2019.

Both Father and Mother demanded a *de novo* hearing. Father's counsel withdrew prior to the September 18, 2019 hearing, and Father was unrepresented. At the hearing, Father complained that the court had assessed his earning capacity as a "painter, construction, maintenance worker," based on the upper end of the values in the PA State Wage Occupational Survey, rather than the midrange. N.T., 9/18/19, at 5-6. He further argued that his earning capacity should be lower, to reflect the economic circumstances of Carbon County, rather than the entire state. ***Id.***; ***see also*** Tr. Ct. Op. at 11. In addition, Father argued the court erred when calculating his rental income based on his 2018 tax return. He specified the return displayed an annual rental income of $20,331, or $1,694 per month, which was lower than the amount on the modified order. N.T. at 9. He also argued the court did not include Mother's income from paragliding activities in the calculation of her net income. ***Id.*** at 10-11.[4]

On December 23, 2019, the court entered a final order of support for three periods: January 1, 2018, through April 17, 2018;[5] April 18, 2018, through June 23, 2019; and June 24, 2019, forward. For the first period, the court assessed Mother's annual earning capacity as an office clerk to be $22,730; for the second and third periods, the court used Mother's actual

---

[4] Father also argued the court miscalculated his rental income for 2017 based on his 2016 tax return. As discussed below, we need not reach this issue, as this period is not addressed by the order under appeal.

[5] The court erroneously labeled this period as commencing on "January 18, 2019," rather than "January 1, 2018." ***See*** Order, 12/23/19, at 1.

- 3 -

income from full-time employment. For all three periods, the court added Mother's rental income of $718.67 per month to her assessed/employment income. The court found Mother's monthly net income to be $2,349.48 for the first period, and $3,398.76, for the second and third periods.

For all three periods, the court assessed Father's annual earning capacity at $42,540.00, using the salary of "an experienced painter, construction, [and] maintenance worker" from Carbon County Labor Market of PA Occupational Wage Survey." Order, 12/23/19, at 1. The court found Father's rental income to be $2,937.25 per month, and calculated his monthly net income to be $5,773.79. The court ordered Father to pay support for each period in the amount of $1,529, $1,461, and $1,549 per month, respectively, plus arrears.[6]

The court noted that it calculated both parties' rental incomes using their 2018 Federal Income Tax returns. It also stated it entered the order "without prejudice to either party filing a Petition for Modification upon finalization of the 2019 Federal Income Tax Returns." *Id.* at 2.

Father appealed, and raises the following issues:

A. Did the trial court err and abuse its discretion by directing that the evidentiary record in this matter be developed by way of deposition testimony instead of a hearing before a judge of the court as provided by Pennsylvania Rule of Civil Procedure 1910.11(i)?

---

[6] Although the parties' assessed incomes remained constant between the second and third periods, the amount of support differed based on changes in childcare expenses.

B. Did the trial court err and abuse its discretion by assessing [Father] with hypothetical income as the assessment was not warranted, the assessment resulted in a greater income than would ordinarily be earned from one full time position and the court failed to correctly apply Pa.R.C.P. 1910.16-2(C)(4)?

C. Did the trial court err and abuse its discretion in assessing [Father's] rental income for all time periods under consideration as the amount of rental income assessed to [Father] was not representative of [Father's] cash flow from rental operations?

D. Did the trial court err and abuse its discretion in the assessment of income to [Mother] in failing to consider any income from [Mother's] business activities including paragliding equipment sales, other independent sales and [Airbnb] rentals?

E. Did the trial court err and abuse its discretion in allocating child care expenses to [Father] as the amount of child care expenses allocated are greater than what should be justified by the circumstances of the parties[?]

Father's Br. at 10-11 (unnecessary capitalization and suggested answers omitted).

"Appellate review of support matters is governed by an abuse of discretion standard." *J.P.D. v. W.E.D.*, 114 A.3d 887, 889 (Pa.Super. 2015) (quoting *R.K.J. v. S.P.K.*, 77 A.3d 33, 37 (Pa.Super. 2013)). "[A]n abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." *Portugal v. Portugal*, 798 A.2d 246, 249 (Pa.Super. 2002) (quoting *Kersey v. Jefferson*, 791 A.2d 419, 423 (Pa.Super. 2002)). We will therefore only reverse an order of support "where the order cannot be sustained on any valid

ground." ***Krebs v. Krebs***, 944 A.2d 768, 772 (Pa.Super. 2008) (quoting ***Mencer v. Ruch***, 928 A.2d 294, 297 (Pa.Super. 2007)).

## I. Use of Deposition Testimony

Father first argues the court erred in ordering the parties to take depositions prior to the *de novo* hearing. Father asserts that Northampton County has adopted Rule of Civil Procedure 1910.11, which provides that if the court enters an order based on a conference officer's recommendations, and either party demands a hearing, the matter "shall" proceed to a hearing before the court. ***See*** Pa.R.C.P. 1910.11(f), (i). According to Father, this restricts development of the record to the *de novo* hearing.[7] Father argues the court's practice of ordering depositions prior to the *de novo* hearing also violates Rule 1910.1(b), which states that domestic relations matters shall proceed in accordance with the Rules of Civil Procedure, as the Rules limit situations in which deposition testimony may be admitted at trial. ***See*** Father's Br. at 23-24 (citing Pa.R.C.P. 4020).

Father further argues this practice prevented the court from assessing Mother's credibility, and placed a financial burden on the parties. Father claims that although the court permitted the parties to testify and present evidence at the September 2019 *de novo* hearing, the hearing was more akin to argument, as the court told Father he could only speak "briefly," due to the

_____

[7] In contrast, Father argues, Rule 1910.12 provides that a party unsatisfied with the support recommendation of the conference officer can elevate the case for development of the record before a hearing officer, prior to consideration by the court. ***See*** Pa.R.C.P. 1910.12(b)-(d).

existence of the depositions, and did not allow Father to introduce a document he had created with his accountant. ***Id.*** at 26 (citing N.T., 9/18/19, at 12), 28. Father contends that he raised this issue by demanding a *de novo* hearing, as provided by the Rules.

As the trial court explains in its Rule 1925(a) opinion, Father did not object to the order for depositions, but fully complied with the order. Tr. Ct. Op. at 33. In addition, Father and Mother "were permitted to supplement the record during multiple conferences and hearings and were permitted to submit additional documents including the submission of Federal Tax Returns for subsequent years," and Father was "permitted to testify and submit documentation at the September 18, 2019 hearing." ***Id.***

We agree. Father did not object to the use of depositions when the court ordered them, or when he submitted them at the *de novo* hearing in October 2018, or when the court stated that it would use the same depositions at the *de novo* hearing in September 2019. Father's failure to timely raise objection to the procedure adopted by the trial court prevented the court from timely addressing Father's concerns, rectifying any defects, or alleviating any perceived prejudice. We therefore find the issue to be waived. [8]

---

[8] We are unpersuaded by Father's attempts to avoid waiver. ***Christian v. Allstate Ins. Co.***, 502 A.2d 192 (Pa.Super. 1985), which Father cites for support, is distinguishable from the instant case. There, we declined to find waiver, even though the appellant did not object to the court's failure to hold an evidentiary hearing, because the court could not have proceeded in that case without a hearing to determine whether there had been a settlement

## II. Father's Earning Capacity

Father next argues the court erred in assessing him with earning capacity as "an experienced painter, construction, maintenance worker." Father's Br. at 30 (quoting Order, 12/23/19). Father claims the court erred in making this assessment without considering his earning history or other statutory factors, and without finding that he willfully failed to obtain or maintain appropriate employment. Father's Br. at 33-34 (citing Pa.R.C.P. 1910.16-2(c)(4)). He points out that the court did not use an assessed income for the period of September 11, 2017, through December 31, 2017, and there was no discernable change in Father's employment following that period.

He further contends the court erred in including both his rental income and his assessed income in his net income, without first finding that Father does not spend any time maintaining his rental properties. According to

---

agreement. **Id.** at 194. Here, however, there was nothing to prevent the court from proceeding to decide the issues in the support case based on the evidence already presented by the parties. Father's reliance on **Bell Fuel Corp. v. Cattolico**, 544 A.2d 450 (Pa.Super. 1988), is likewise misplaced. In **Bell Fuel**, we declined to find waiver where the appellant did not object when the trial court abruptly terminated an evidentiary hearing on a preliminary injunction matter and proceeded to argument on a motion for summary judgment. **Id.** at 454 n.3. No such unanticipated, unorthodox procedure was adopted here. Rather, the court announced in advance that it would decide the support case using depositions, the parties acquiesced to this procedure, and the court proceeded accordingly. Nor do we find this case akin to **DiMonte v. Neumann Medical Center**, 751 A.2d 205 (Pa.Super. 2000), in which we declined to fault the appellant for failing to object when the trial judge took personal phone calls and engaged in other inappropriate behavior during a jury trial. **Id.** at 210. Here, the court simply conformed to the procedure that it had laid out months before, to which Father had ample opportunity to object.

Father, the court thereby attributed more income to Father than one single, full-time job. Father claims he maintains the properties himself, and does not use a third-party manager.

Although the trial court was not bound by its previous orders, Father was aware that the court had utilized an assessed earning capacity for Father in generating both the April 5, 2019 interim order and May 31, 2019 modified order, as recommended by the conference officer. *See* Tr. Ct. Op. at 19-20. Nevertheless, at the *de novo* hearing, Father only raised a challenge to the *amount* of his assessed earning capacity, on the basis that the court utilized a high-end value from a statewide survey.[9] *Id.* at 19. He did not argue that the court should not have assessed him with any earning capacity, or should not have classified him as a painter/construction/maintenance worker, or should not have added his rental income to his earning capacity. Father waived these issues by failing to raise them before the trial court. *See* Pa.R.A.P. 302(a).

Even if Father had not waived these issues, we would not find any abuse of discretion. The court found Father "could realistically earn additional income under the circumstances, considering his age, health, mental and physical condition and training." Tr. Ct. Op. at 25-26. The court noted that Father testified he had been maintaining rental properties for 20 years or more, and

_____

[9] In response, the court utilized the Carbon County Labor Market of PA Occupational Wage Survey to glean Father's assessed income for the final order following the *de novo* hearing.

determined that under the circumstances he could reasonably earn the assessed income of $42,540 per year. *Id.* at 26.

### III. Father's Rental Income

Father complains the court erred in calculating his rental income by using the rental income listed on his 2018 tax return and adding on the amounts listed for depreciation and attorneys' fees. He claims that although he had asked the court to calculate his rental income in this manner in 2017, it was error for the court to utilize the same method to calculate his 2018 rental income, as "[t]here had been no [e]videntiary [r]ecord made regarding Father's 2018 Tax Return." Father's Br. at 37. Father claims he lost several rental properties in 2018 in the divorce settlement, and he made payments on debts he incurred to maintain the properties that were not reflected on the tax return. He also claims the court erred in its calculation because even considering only the values on the 2018 return, Schedule E of the return showed $7,130 income from rental operations, and $13,201 in claimed expenses, which would have totaled an annual rental income of $20,331, which does not support a monthly rental income of $2,937.25.

The parties' 2018 tax returns, from which the court derived the parties' rental incomes, are not included in the certified record. We therefore find the issue of how the court calculated Father's rental income waived. *See Kessler v. Broder*, 851 A.2d 944, 950 (Pa.Super. 2004). Moreover, as the trial court points out, it used the 2018 tax return in the way Father had requested the court use his 2017 tax return earlier in the proceedings. *See* Tr. Ct. Op. at

- 10 -

23-24 (citing Father's Brief Upon De Novo Review, 10/15/18, at 12). Regardless, we find no abuse of discretion in the court's having gleaned the rental income from the values Father declared when filing his federal income taxes.

Father also challenges the court's assessment of $5,409 per month in rental income for the period from September 11, 2017, through December 31, 2017. Father claims it does not relate to the parties' reported net rental income of $19,863. However, this period was not addressed at the September 18, 2019 *de novo* hearing, or by the final order under appeal. Rather, this period was covered by the order of November 14, 2018, which finalized the October 26, 2017 order for the period September 11, 2017, through December 31, 2017. Father did not appeal that order. We are therefore unable to disturb the findings of the court on this point.

## IV. Mother's Income

Father argues the court abused its discretion when determining Mother's income, because it did not consider her additional earnings from various income sources.[10] Father also claims the court did not consider statutory factors in assessing Mother's earning capacity, and that Mother failed to comply with a Notice to Attend and produce all relevant information.

The court found Mother had minimal income from these sources during the first period of support, and so it instead determined her income by using

---

[10] These include renting out her home on Airbnb, selling wine for a direct sales business, selling coffee online, and selling paragliding equipment.

an assessed earning capacity and rental income. Tr. Ct. Op. at 27-28. The court found there was no evidence that Mother had additional income sources in the second or third periods, and therefore used only her rental income and her actual income from full-time employment. *Id.* at 28. The court points out that the order under appeal specifies that either party may file for modification based on the 2019 tax returns. We find no abuse of discretion.

## V. Childcare Expenses

Father's final argument is that because the court miscalculated Father's and Mother's incomes, it miscalculated their respective relative proportional childcare responsibilities. As we find no abuse of discretion in the court's determination of the parties' incomes, there is no basis for revising the proportional childcare allocation.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/20